UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>PHIL POND,<br><br>Defendant. | 5:24-CR-50009-CCT-2<br><br><br>**ORDER DENYING DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA** |

Defendant, Phil Pond, moves to withdraw his guilty plea pursuant to Federal Rule of Criminal Procedure 11(d)(2)(b). Docket 417. The Government objects. Docket 430.

## BACKGROUND

Mr. Pond was indicted on January 18, 2024, on one count of conspiracy to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A); and on one count of distributing methamphetamine to S.C., an individual under the age of 21, in violation of 21 U.S.C. §§ 841(a)(1) and 859(a). Docket 1. Mr. Pond was originally appointed CJA counsel. Docket 34. However, he filed an ex parte request to proceed pro se, Docket 55, which was granted by Magistrate Judge Wollman, Docket 62. Judge Wollman also appointed Mr. Pond's CJA to be standby counsel and assigned Mr. Pond an investigator to assist him in his defense. *Id.*; *see also* Docket 255 (assigning a new investigator after the first was unable to assist).

1

While proceeding pro se, Mr. Pond brought a slew of pro se motions and filings, including for example, a motion to dismiss the indictment as duplicitous and improper, Docket 89, multiple motions for production of documents, Dockets 112, 120, and 131, and a letter that was construed as a motion to disqualify the judge, Docket 227. *See generally* Dockets 86 through 236 (the multiple filings and related rulings from February 27, 2024 to July 16, 2024). On July 3, 2024, Mr. Pond's standby counsel moved to withdraw, Docket 238, and Magistrate Judge Wollman granted the request on July 10, 2024, Docket 255, after a hearing. Thereafter, Mr. Pond continued to file pro se motions in preparation for the scheduled July 30, 2024 jury trial, including a motion alleging a *Brady* violation, violation of due process, and prosecutorial misconduct, Docket 259, and an ex parte motion identifying 25 individuals he would like subpoenaed to testify at his trial, Docket 263.

On July 18, 2024, a superseding indictment was filed, adding five counts of distributing a controlled substance to an individual under the age of 21 in violation of 21 U.S.C. §§ 841(a)(1) and 859(a). Docket 279. These additional counts related to individuals other than S.C., the individual named in the original indictment. *Id.* Mr. Pond was arraigned on the superseding indictment on July 19, 2024, and he pled not guilty. Docket 281. On that same date, Magistrate Judge Wollman held a hearing on Mr. Pond's motion alleging a *Brady* violation, violation of due process, and prosecutorial misconduct. *See* Docket 259. Mr. Pond asserted that the government failed to turn over information regarding criminal cases related to crimes against S.C. committed

2

by persons other than Mr. Pond. *Id.* Mr. Pond also claimed that the government

failed to turn over materials pertaining to S.C.'s past sexual conduct. *Id.*

After noting that Mr. Pond has not been charged in the current matter

with a sexual offense against S.C., Judge Wollman determined, in her report

and recommendation, that S.C.'s past sexual experience and the criminal cases

against persons other than Mr. Pond for crimes against S.C. were not relevant

to or admissible in his trial. Docket 286 at 6–7. Mr. Pond did not object to the

report and recommendation, and this Court adopted it. Docket 287.

On July 25, 2024, the Court held a pretrial conference.[1] Docket 299.

During this conference, which lasted approximately two hours, the Court and

parties addressed multiple matters, including trial logistics, the Court's

preliminary jury instructions, the government's motions in limine, other

motions filed by the government, and Mr. Pond's questions and concerns. For

his part, Mr. Pond's arguments and objections during this hearing were largely

based on relevant legal principles and reflected his understanding of the nature

of the proceedings, his rights, and many governing laws. For example, Mr.

Pond objected to a portion of the government's notice of intent to impeach with

prior felony convictions, Docket 254, because the notice identified felonies

outside the ten-year look back window. The Court sustained Mr. Pond's

objection for those stale convictions. *See* Docket 301 (order on pretrial rulings).

---

[1] No transcript has been prepared of this hearing. This summary of the hearing is
derived from an audio recording and the Court's memory.

While Mr. Pond advanced additional arguments throughout the hearing, some successfully so, a re-occurring subject raised by Mr. Pond concerned his desire to introduce evidence related to S.C.'s past sexual conduct and the government's investigations into sexual crimes against S.C. Prior to the preliminary hearing, the government filed a motion in limine, Docket 271, requesting that evidence of S.C.'s sexual history and its investigation into sex crimes against her be precluded from trial as inadmissible and not relevant. In its motion, the government alleged that Mr. Pond and his father had "sexually assaulted S.C.," who was sixteen years old at the time, when she was under the influence of methamphetamine provided to her by Mr. Pond. *Id.* at 1. The government claimed that Mr. Pond "has requested access to discovery materials related to S.C. and two defendants" who were prosecuted for crimes against S.C. *Id.* According to the government, one defendant "enticed S.C. into sending him nude photographs (child pornography)" and the other defendant "assaulted S.C. when she was approximately 11 years old." *Id.* In seeking to preclude admission of this evidence at Mr. Pond's trial, the government noted that Mr. Pond has not been charged with sexual assault. *Id.*

When the Court addressed this motion in limine at the July 25 pretrial conference, Mr. Pond objected. He acknowledged that he had not been charged with sexual assault, but he claimed that S.C.'s sexual history is relevant to his ability to show that she is lying. He also asserted that the evidence is relevant to show how the government is conducting its investigation against him. The Court disagreed, concluding that neither S.C.'s sexual history nor the cases

4

against the other defendants is relevant to the current criminal charges against Mr. Pond. Therefore, the Court granted the government's motion in limine, Docket 271, precluding Mr. Pond from introducing evidence or testimony in that regard, Docket 301. The Court also granted the government's motion, Docket 297, to quash Mr. Pond's subpoena for an investigator that worked on a criminal case against a different defendant concerning S.C. Docket 301.

Four days later, on July 29, 2024, the Court intended to hold another pretrial conference to resolve any pending matters before the start of the jury trial the next morning. Docket 419 (transcript from July 29 hearing). However, prior to the proceeding, the government and Mr. Pond executed a plea agreement and filed that agreement, a factual basis, and a supplement to the plea agreement with the Court. Dockets 305–07. At this July 29 hearing, Mr. Pond agreed that it was his intent to plead guilty pursuant to the plea agreement. Docket 419 at 3. Mr. Pond was placed under oath, and the Court began to canvass him regarding his intent to plead guilty, his state of mind, and his understanding of the nature of the charges against him, the maximum penalty he faces, and the terms of the plea agreement.

When the Court asked him whether he had ever been treated for any serious mental illness, Mr. Pond stated that he had been diagnosed with "borderline schizophrenia, substance - - polysubstance abuse disorder, multi-personality disorder, several - - several. I can't - - I can't really recall everything right now." *Id.* at 5. He confirmed that he was not currently being treated for any of those conditions; however, when the Court asked whether he was "in

[his] right frame of mind as we sit here today," Mr. Pond replied, "It's questionable, Your Honor." *Id.* At this point, the trajectory of the hearing changed.

Mr. Pond claimed to be stressed out about a sexual harassment or sex abuse investigation taking place in the jail. *Id.* at 5. He also claimed that "the infomercials and commercials that came on started telling [him] different things that were taking place" and that, in response, he asked his standby counsel and his investigator assigned to his case at that time to come to the jail "because it was getting too much for [him]." *Id.* at 5–6. Mr. Pond did not give specific dates in reference to the above, but based on his reference to his standby counsel, who was granted withdrawal on July 10, 2024, Docket 255, it appears this was occurring prior to the July 25 pretrial conference.

Mr. Pond then referred to his concern that "the Government was setting up a sexual assault against [him.]" Docket 419 at 6. He claimed he shared this concern with his current investigator and told him that he wanted to introduce some of those issues in his upcoming trial. *Id.* According to Mr. Pond, his investigator told him that he did not believe this Court would allow arguments of that nature in front of the jury. *Id.* This "troubled" Mr. Pond because he was "having issues with that." *Id.*

The Court thereafter asked Mr. Pond a series of questions to try to understand whether Mr. Pond was referring to recent issues he was having or to issues that occurred prior to the July 25 pretrial conference. *Id.* at 6–8. Mr. Pond agreed that some concerns were from before July 25 and that he did not

share these concerns with the Court then. *Id.* at 6–7. He thereafter continued to talk about his belief that there was an impending sexual assault investigation and his feelings about that. *Id.* at 8-10.

The Court attempted to redirect the conversation to whether Mr. Pond was currently in the right frame of mind. *Id.* at 10. The Court explained to Mr. Pond that it must make sure of his intent to plead guilty and that his plea is knowing and voluntary. *Id.* at 10–11. The Court directed Mr. Pond to the signed plea agreement, and he acknowledged that he did sign the agreement. *Id.* at 11–13. However, he said that he will "just go to trial tomorrow[.]" *Id.* at 14. The Court asked him why he had changed his mind, and he replied, "I guess I just don't understand the plea agreement." *Id.* at 14. The Court accepted his desire to go to trial as planned. *Id.*

Thereafter, the Court began to address the matters it would have addressed had the hearing been a pretrial conference. *Id.* at 14–18. The Court, using Mr. Pond's ex parte list of witnesses he wanted to have subpoenaed because he did not provide the government his witness list as required, asked Mr. Pond to identify the testimony he intended to procure at trial from these witnesses. *Id.* 15–17. For the first witness on his list, Mr. Pond provided specific expected testimony and related why he believed this witness's testimony was relevant to the criminal charges against him. *Id.* at 16–17. In response, the government moved to quash the subpoena for this witness, arguing that her testimony would be hearsay. *Id.* at 17–18. Mr. Pond replied,

7

"That's fine," and the Court agreed, after explaining why, that the testimony would be hearsay and granted the motion to quash. *Id.* at 18.

The Court began to discuss the second witness on Mr. Pond's list, but Mr. Pond said, "Your Honor, how come we're not doing the plea bargain?" *Id.* at 19. The Court reminded Mr. Pond of the prior discussion, and the following occurred:

The Court:   Okay. I don't appreciate it if you're playing games with me, Mr. Pond. We're set for trial tomorrow morning.

Mr. Pond:   Correct.

The Court:   And then prior to this hearing, which was to start at 1:00 - -

Mr. Pond:   Right.

The Court:   - - I was handed a plea agreement and supporting plea document - -

Mr. Pond:   I just signed it.

The Court:   That came - -

Mr. Pond:   I signed it.

The Court:   Right. So I came in here, and I asked if you were - - if it was your intention to enter into the plea agreement.

Mr. Pond:   Yes.

The Court:   And you said that it was.

Mr. Pond:   Correct.

The Court:   So then I - -

Mr. Pond:   I signed it.

The Court:   So then I started to canvas you about it, and three times while I was canvassing you, you indicated that

> you did not want to enter into the plea agreement and
> you wanted to go forward with trial tomorrow.
>
> So what is it that you intend to do today, either we're
> prepping for trial tomorrow or you're entering into a
> plea agreement?

Mr. Pond:     I entered into a plea agreement.

The Court:    Okay. So, Mr. Pond, I'm going to start over with regard
              to the plea agreement, okay?

. . .

The Court:    So there are number of questions that I'm going to ask
              you to determine if I'm going to accept a plea
              agreement or not.

Mr. Pond:     Okay.

*Id.* at 19–20.

The Court started anew with the colloquy to assess Mr. Pond's intent to
plead guilty, his state of mind, his understanding of the nature of the charges
against him, the maximum penalty he faces, and the terms of the plea
agreement. *Id.* at 21. When the Court re-asked the question regarding whether
Mr. Pond has been treated for a serious mental illness, he again replied
affirmatively. *Id.* at 23. He related that he has received treatment for a mental
illness while in custody. *Id.* at 23. However, he stated that it was not within the
past six months and that he did not want to be on medication currently
because he is representing himself. *Id.* He repeated some of the information he
shared earlier about informing his standby counsel of his concerns and that he
did not share his concerns with the Court at the July 25 pretrial conference. *Id.*
at 24. Mr. Pond seemed to suggest that he was not having issues at the time of

the July 25 pretrial conference, stating that he did not think that the "stuff" (possibly referring to sex crime charges) was a "real thing" then. *Id.* at 25. He claimed that he "might have been delusional" and "might have been hearing stuff or having audio hallucinations." *Id.* He also claimed that he was "just trying to move forward" and trying to "get it over with." *Id.*

The Court asked Mr. Pond if what he was referring to was the evidence the Court ruled at the July 25 hearing would not be admissible at trial. *Id.* at 26. Mr. Pond replied, "No[,]" and related "that the infomercials or the commercials were telling" him that the government is "taking part in [ ] setting him up for a sexual assault." *Id.* He further stated that he told this to his standby CJA counsel and his prior investigator, and he confirmed he did not tell the Court about it on July 25. *Id.* at 27. He claimed he was "kind of not going through that stuff in - - last week" and "wasn't hearing stuff or wasn't having an issue." *Id.* at 27.

The Court emphasized to Mr. Pond that it was trying to figure out whether he is in a place where he could enter a plea. *Id.* at 28–29. He indicated that he understood why the Court was asking its questions. *Id.* at 29. The Court asked him whether he understood what the superseding indictment was charging and what he would go to trial on tomorrow. *Id.* He replied, "Yes." *Id.* He then asked, "Is it superseding indictment the same 500 gram that's from the original indictment, the same 500-gram conspiracy?" *Id.* After the Court confirmed that information, Mr. Pond replied, "I understand that." *Id.* The Court stated that Mr. Pond was "intelligent" and "familiar with navigating legal

proceedings." *Id.* at 30. Mr. Pond agreed that this assessment was "fair." *Id.* He also agreed that his legal arguments cite law and his pleadings, though handwritten, could be drafted in legal cases. *Id.* Finally, he agreed that he has represented himself in the past and obtained an acquittal in a prior criminal jury trial. *Id.*

As it pertains to the current plea agreement, Mr. Pond replied, "No," when asked whether anyone made any threats or promises to get him to enter into the plea agreement. *Id.* at 31. He indicated he understood that he would be pleading guilty to count one in the superseding indictment rather than going to trial on all seven counts. *Id.* The Court informed Mr. Pond that the "charge carries a mandatory minimum sentence of ten years in prison and a maximum sentence of life in prison, a $10 million fine, or both, and a period of supervised release of five years up to life." *Id.* at 32. He agreed that these are the maximum penalties in the plea agreement and are the maximum possible penalties he will face. *Id.* at 32–33.

The Court asked Mr. Pond whether he has "had the opportunity to consider the sentencing guidelines and how they might apply in [his] case." *Id.* at 33. He replied, "No, Your Honor[,]" and in response the Court advised him that the guideline range is not calculated until after a defendant pleads guilty and further that the guideline range might be higher or different than he expects. *Id.* at 33–34. The Court then said, "If that's the case, do you understand that you don't have the right to go back and withdraw your plea of

guilty and start all over in your case? Do you understand that?" *Id.* at 34. Mr. Pond replied, "Yes." *Id.*

The Court also confirmed Mr. Pond's understanding that he does not have the right to go back and withdraw his plea if the Court does not follow the sentencing recommendation or if the Court gives a sentence he disagrees with or dislikes. *Id.* at 34–35. After obtaining affirmative responses from Mr. Pond regarding his plea and the charges, the Court asked Mr. Pond for his plea to count one in the superseding indictment. *Id.* at 38. He replied, "Guilty." *Id.* at 39. He further replied, "Yes, Your Honor," when asked whether he was pleading guilty to count one in the superseding indictment because he was "in fact, guilty of the charge." *Id.*

The government made an additional record on the Court's discussion of Mr. Pond's understanding of the sentencing guidelines. *Id.* at 40. In that regard, the government related that "Mr. Pond is aware of the guidelines, through his prior felony convictions in United States Federal Court, and at that point the guidelines would have been explained to him as well." *Id.* Though invited to respond, Mr. Pond did not make an additional record. *Id.*

The Court found "that Mr. Pond is competent and capable of entering into an informed plea, that he's aware of the nature of the charges against him and the consequences of his plea, that his plea is knowing and voluntary, and it is supported by an independent basis in fact that contains each of the essential elements of the offense." *Id.* The Court noted that Mr. Pond declined to be represented and had thus represented himself throughout the

12

proceedings. *Id.* at 40–41. The Court found that he understood his rights and the maximum possible penalties he faced and was acting of his own free will and not under duress. *Id.* at 41. The Court therefore "accept[ed] his guilty plea and adjudicate[d] him guilty." *Id.*

The Court ordered that a draft presentence report (PSR) be completed by September 5, 2024, and that objections be filed by September 26, 2024. Docket 312. The draft PSR was filed on September 4, 2024, and the Court arranged for Mr. Pond to review the report at the courthouse on September 6, 2024. Docket 353. After reviewing the report, Mr. Pond, in a letter to the Court, requested the appointment of counsel to assist in filing objections. Docket 359. The Court appointed counsel on September 11, 2024, Docket 362, and set December 3, 2024, Docket 382, as the due date for filing objections to the draft PSR.

On October 22, 2024, Mr. Pond, now represented by counsel, filed a motion for competency evaluation, Docket 409, and on November 8, 2024, he filed the current motion to withdraw his guilty plea, Docket 417. The government objects to both motions, Dockets 430, 433. This order addresses only Mr. Pond's motion to withdraw his guilty plea.

## LEGAL STANDARD

A defendant may withdraw a guilty plea after a court accepts the plea but before the court imposes its sentence if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "While the standard is liberal, the defendant has no automatic right to withdraw a plea." *United States v. Sharp*, 879 F.3d 327, 333 (8th Cir. 2018) (quoting *United*

*States v. Heid*, 651 F.3d 850, 853 (8th Cir. 2011)). "A defendant bears the burden of establishing a fair and just reason." *Id.* However, "[e]ven if a defendant shows a fair and just reason for withdrawal, 'the court must consider other factors before granting the motion, namely, whether the defendant asserts his innocence of the charge, the length of time between the guilty plea and the motion to withdraw it, and whether the government will be prejudiced if the court grants the motion.'" *United States v. McHenry*, 849 F.3d 699, 705 (8th Cir. 2017) (quoting *United States v. Cruz*, 643 F.3d 639, 642 (8th Cir. 2011)). "'[T]he decision to allow or deny the motion remains within the sound discretion of the trial court.'" *United States v. Smith*, 422 F.3d 715, 724 (8th Cir. 2005) (quoting *United States v. Prior*, 107 F.3d 654, 657 (8th Cir. 1997)).

## DISCUSSION

Mr. Pond contends that "[h]is plea could not have been knowing and voluntary because he had no law background and had no knowledge or understanding of the sentencing guidelines and the ramifications of those guidelines to his case."[2] Docket 417 at 2. He more specifically asserts that he

---

[2] In his reply brief, Docket 438 at 1, Mr. Pond also asserts that this Court "did not accept the plea" at the July 29 hearing and instead "only" said, "I've taken Mr. Pond's plea." Mr. Pond then suggests that the Court intended to defer acceptance of Mr. Pond's plea until after having a chance to review the PSR. *Id.* First, Mr. Pond raises this argument for the first time in his reply, and this Court generally does not consider arguments raised for the first time in a reply brief. *See Auto Owners Ins. v. Jones Manf. Co.*, 4:19-CV-04134-KES, 2022 WL 5247147, at *5 n.2 (D.S.D. July 26, 2022). More importantly, however, the Court accepted Mr. Pond's guilty plea, and his argument otherwise is not supported by the record. On the same page as the statement quoted by Mr. Pond, the Court said that it "accept[s] his guilty plea and adjudicate[s] him guilty." Docket 419 at 41.

"had no knowledge that his guideline sentence would be life based on a total offense level of 43 and a criminal history of VI." *Id.* In his view, "this in and of itself shows that he could not have a sufficient understanding to enter a valid plea." Docket 438 at 4. However, he also highlights that he appeared pro se, has a 9th grade education (though he obtained his GED), and "had no counsel that explained the evidence and discovery to him and any defenses that he may have had to the charge against him."[3] Docket 417 at 2.

In response, the government asserts that Mr. Pond has not met his burden of showing fair and just grounds to withdraw his guilty plea. Docket 430 at 7. Rather, the government views Mr. Pond's motion as a post-plea regret. *Id.* at 10. As it pertains to Mr. Pond's specific arguments, the government disagrees that Mr. Pond's pro se status or lack of awareness about how the sentencing guidelines would apply to this case constitute fair and just grounds to allow him to withdraw his plea. *Id.* at 7–8. According to the government, Mr. Pond has familiarity with the law based on his past experiences representing himself in criminal proceedings, including in a federal jury trial wherein he obtained an acquittal. *Id.* at 7. It also notes that the Court informed Mr. Pond of the statutory range of punishment, that the guidelines

---

[3] Also raised for the first time in his reply brief, Mr. Pond asserts that the timing—being presented the plea agreement the day before trial—supports allowing him to withdraw his guilty plea. Docket 438 at 1. While this Court disagrees that the timing alone supports withdrawal under the circumstances of Mr. Pond's case, the Court declines to more fully address Mr. Pond's argument in this regard because he did not raise it until his reply brief. *See Auto Owners*, 2022 WL 5247147, at *5 n.2.

would be used in determining the ultimate sentence, and the resulting range might be different than he expected. *Id.* at 8.

Based on the Court's observations of Mr. Pond at the July 25 pretrial conference and July 29 change of plea hearing and a review of the record in this case, Mr. Pond has not met his burden of showing a fair and just reason for his request to withdraw his guilty plea. Although he has no "law background," as he calls it, and he appeared pro se throughout the majority of the current case, he has represented himself in the past, and in this case, he exhibited his understanding of relevant legal principles and an ability to file pleadings that would be properly filed in legal proceedings. In fact, he specifically agreed during the change of plea hearing on July 29 that he is intelligent, is familiar with navigating the legal system, and cites applicable law in his arguments and pleadings. Docket 419 at 30. These "representations during the plea colloquy 'carry a strong presumption of verity and pose a formidable barrier' in a subsequent attack." *United States v. Morales*, 834 F. App'x. 304, 305 (8th Cir. 2021) (mem.) (quoting *Adams v. United States*, 869 F.3d 633, 635 (8th Cir. 2017)).

The Court then turns to Mr. Pond's claim that he did not understand how the sentencing guidelines would apply to his case and further claim that this lack of understanding "is shown by the life sentence calculated and set forth in the presentence investigation." Docket 417 at 2; Docket 438 at 2. The Eighth Circuit has made clear that a defendant's misunderstanding about how the sentencing guidelines will affect him is not a fair and just reason to

withdraw a guilty plea. *See United States v. Ramirez-Hernandez*, 449 F.3d 824, 826 (8th Cir. 2006). In that case, the Court explained:

> A defendant may not withdraw a plea, however, merely because he misunderstands how the sentencing guidelines will apply to his case. So long as the district court tells a defendant the statutory range of punishment that he faces and informs him that the sentencing guidelines will be used in determining the ultimate sentence, the plea is binding. *United States v. Burney*, 75 F.3d 442, 445 (8th Cir. 1996). This is true even where the misunderstanding is caused by defense counsel's erroneous estimation of what the ultimate sentence will be.

*Id.*

Here, the Court advised Mr. Pond that he faces a statutory range of punishment from a mandatory minimum of ten years to a maximum sentence of life. Docket 419 at 32. The Court also advised him that the guidelines would be used in determining his ultimate sentence. *Id.* at 33. And while Mr. Pond replied, "No, Your Honor," when he was asked whether he had the opportunity to consider the guidelines and how they might apply to him, the Court thereafter explained,

> So, although you may have an idea, or may not, on what you think the sentencing guideline might be, no one, as we sit here today, can tell you exactly what your guideline rang will end up being. The reason for that is because a Defendant's guideline range is not calculated until after they plead guilty.

> So what will happen if you plead guilty here today is you'll meet with the U.S. probation officer at some point for an interview. They'll gather information about the facts and circumstances of this crime, as well as your prior criminal history, and only based on that independent investigation and the Court's ruling on any objections will your exact guideline range be calculated. Your guideline range may be different, and possibly higher, than what you think it might be.

*Id.* at 33–34. The Court also specifically advised him that the guideline range may be higher or different than he expects, and if that occurs, Mr. Pond does not thereafter have the right to withdraw his guilty plea. *Id.* at 33–34. Mr. Pond indicated his understanding of these advisements. *Id.* Importantly, a defendant is not "permitted to disown his solemn admission in open court" simply because of his mistaken understanding. *United States v. Morales*, 120 F.3d 744, 748 (8th Cir. 1997) (concluding that the Constitution does not require allowing a defendant to disown his admission made in open court just because he was mistaken in his understanding of the strength of the government's case).

However, Mr. Pond contends that that "drugs and [his] mental illness prevented him from understanding the plea[.]" Docket 417 at 2. He relies on his pending motion for a competency evaluation and portions of his PSR, Docket 409, summarizing his mental and emotional health history, and on a declaration by his current counsel, Docket 410, setting forth what Mr. Pond related to counsel regarding his mental health. In his reply brief, his attorney paints a picture of Mr. Pond at the July 29 change of plea hearing as "overwhelmed by legal niceties"; "relent[ing] to the plea"; "answering in yes or no fashion"; and providing "disorganized and nonsensical" statements. Docket 438 at 2–3.

The government acknowledges that Mr. Pond said he was hearing things from commercials and infomercials, but according to the government, "the record establishes that he understood the proceedings, and knew what he was

18

doing." Docket 430 at 9. The government further asserts that "[t]here is no evidence or medical opinions in the record establishing that he was suffering from a mental disease or defect" at that time. *Id.*

The Court will address in a separate order the merits of Mr. Pond's motion for a competency evaluation, for which counsel requests Mr. Pond be evaluated to determine whether he is *presently* suffering from a mental disease or defect that renders him incapable of understanding the nature and consequences of the proceedings against him or to assist in his own defense. *See* Docket 409. As it pertains to his competency *in the past,* namely at the change of plea hearing on July 29, 2024, it is important to note "[r]etrospective determinations of whether a defendant is competent to stand trial or to plead guilty are strongly disfavored." *See Weisberg v. State of Minn.*, 29 F.3d 1271, 1278 (8th Cir. 1994). Moreover, although Mr. Pond informed the Court of his past mental health diagnoses during the July 29 proceeding, this does not mean that Mr. Pond was incompetent on July 29. To the contrary, "[m]ental illness and cognitive impairment are not synonymous with incompetence[.]" *United States v. Dahl*, 807 F.3d 900, 904 (8th Cir. 2015). Further, even though he said that infomercials and commercials talked to him, whether in the past or currently, that does not automatically demonstrate incompetence, as "not every manifestation of mental illness demonstrates incompetence[.]" *Vogt v. United States,* 88 F.3d 587, 591 (8th Cir.1996) (cleaned up); *see also United States v. Ghane,* 593 F.3d 775, 779 (8th Cir. 2010) (providing that "a mental deficiency or . . . bizarre, volatile, and irrational behavior does not necessarily

19

make [a defendant] incompetent to stand trial" (citation and internal quotation marks omitted)).

First, this Court disagrees with counsel's characterization of Mr. Pond's statements from the July 29 proceeding. Counsel did not represent Mr. Pond at the time and thus was not in the courtroom to observe Mr. Pond while he spoke. This Court, in contrast, personally observed Mr. Pond, not just on July 29, but for approximately two hours four days earlier. It is this Court's opinion that on July 29, Mr. Pond was not, as counsel claims, "overwhelmed by legal niceties"; he did not "relent to the plea"; and he did not answer in only in a "yes or no fashion." *See* Docket 438 at 2–3. In fact, while Mr. Pond answered "yes" or "no" to some of the Court's questions, during the colloquy, he was engaged and exhibited understanding of the import of his answers.

For example, he did not simply reply "yes," when the Court asked him whether he understood the charges in the superseding indictment. Rather, he said, yes, and asked a fact-specific question indicating his understanding of the nature of the charges against him and the charge for which he is pleading guilty. Docket 419 at 29 (Mr. Pond asked, "Is it superseding indictment the same 500 gram that's from the original indictment, the same 500-gram conspiracy[,]" and after the Court confirmed that information, he replied, "I understand that.").

Moreover, although some of his statements were disorganized, the Court disagrees with counsel's view based on the transcript that Mr. Pond was "nonsensical" at times. Importantly, Mr. Pond said, "That's fair[,]" when the

Court shared its impression that he is "intelligent" and is "familiar with navigating legal proceedings." *Id.* at 30. Indeed, Mr. Pond has represented himself in a prior criminal case in federal court and obtained an acquittal on a firearm offense. *United States v. Pond*, 5:21-CR-50028-KES, Docket 111 (D.S.D.). He also represented himself in a different criminal case, after being dissatisfied with five different court-appointed attorneys, and he ultimately entered a guilty plea pursuant to a plea agreement. *United States v. Pond*, 5:18-CR-50106-JLV-1 (D.S.D.).

Nevertheless, because of Mr. Pond's mental health history and the concerns he expressed at the July 29 proceeding, this Court was careful not to accept Mr. Pond's guilty plea until after engaging in an extensive colloquy with him to determine that he desired to plead guilty and was able to knowingly and voluntarily enter a guilty plea pursuant to the plea agreement. At no point during the change of plea hearing did Mr. Pond indicate he did not understand the nature of the charges against him, the consequences of pleading guilty, or the potential maximum punishment he faces. Rather, he exhibited "a rational as well as factual understanding of the proceedings[,]" *see United States v. Murphy*, 572 F.3d 563, 569 (8th Cir. 2009) (citation omitted), and showed that he could assist properly in his defense. *See United States v. Whittington*, 586 F.3d 613, 618 (8th Cir. 2009) (citation omitted).

It is this Court's view, based on its personal experience with Mr. Pond, that he filed the current motion to withdraw his guilty plea out of regret and not because of the mental health issues he exhibited at the July 29 proceeding.

Of particular note, after he pled guilty, he filed multiple letters with the Court, none of which raised the concerns he currently raises. For example, Mr. Pond filed a letter, dated September 2, 2024, requesting he be allowed to correspond with his little sister and father and that the Court order him to attend the residential drug and alcohol program. Docket 348. In this letter, Mr. Pond also related that he is "willing to sign the Presentence Report or waive [his] right to file any objections to move the process forward" if the government is agreeable to that. *Id.* In return, he "simply respectfully seek[s] to expedite the actual sentencing instead of leaving the scheduled date for sentencing." *Id.* Then, after Mr. Pond reviewed the PSR, he, in a subsequent letter to the Court, requested the appointment of counsel. Docket 359. He did not assert innocence, mental health concerns, or suggest that he wanted to withdraw his guilty plea. *Id.* Rather, he wanted the assistance of counsel to review the PSR and make objections "to prevent being calculated and sentenced under any erroneous grounds or reasoning." *Id.* Notably, Mr. Pond, through counsel, has now filed ten pages of objections to the draft PSR. Docket 434.

It is well settled in the Eighth Circuit that "[p]ost-plea regrets by a defendant caused by contemplation of the prison term he faces are not a fair and just reason for a district court to allow a defendant to withdraw a guilty plea . . . ." *United States v. Bowie*, 618 F.3d 802, 811 (8th Cir. 2010) (quoting *United States v. Davis*, 583 F.3d 1081, 1089 (8th Cr. 2009)). For all the reasons stated above, Mr. Pond has not met his burden of showing a fair and just reason to withdraw his guilty plea; thus, his plea his binding. *See Ramirez-*

22

*Hernandez*, 449 F.3d at 826. Moreover, because he has not shown a fair and just reason, this Court need not consider other factors. *See United States v. Teeter*, 561 F.3d 768, 770 (8th Cir. 2009) (citation omitted).

Accordingly, it is hereby

ORDERED that Mr. Pond's motion to withdraw his guilty plea, Docket 417, is denied.

DATED December 17, 2024.

BY THE COURT:

/s/ *Camela C. Theeler*
CAMELA C. THEELER
UNITED STATES DISTRICT JUDGE